U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

APR 1 7 2014

CLERK, U.S. DISTRICT COURT

By _____
           Deputy

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| LAURIE ANN NUNLEY, | § | |
|     PLAINTIFF, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:13-CV-00094-A |
| | § | |
| CAROLYN W. COLVIN, | § | |
| ACTING COMMISSIONER OF | § | |
| SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

### I. STATEMENT OF THE CASE

Plaintiff Laurie Ann Nunley ("Nunley"), filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits ("DIB") under Title II and supplemental security income ("SSI") under Title

XVI of the Social Security Act ("SSA"). In May 2010, Nunley protectively applied for disability

insurance benefits and supplemental security income, alleging that her disability began on

February 19, 2010. (Tr. 120.)

After her application for benefits was denied initially and on reconsideration, Nunley

requested a hearing before an administrative law judge ("ALJ"). (Tr. 13.) The ALJ held a

hearing on August 11, 2011, and issued an unfavorable decision on September 23, 2011. (Tr. 10-12.)  On December 12, 2012, the Appeals Council denied Nunley's request for review, leaving the ALJ's decision as the final decision of the Commissioner in her case. (Tr. 1-5.) Nunley subsequently filed this civil action seeking review of the ALJ's decision.

## II.  STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA. In addition, numerous regulatory provisions govern DIB and SSI benefits. *See* 20 C.F.R. Pt. 404 (2012) (DIB); 20 C.F.R. Pt. 416 (2012) (SSI). Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and the SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). The SSA defines a "disability" as a "medically determinable physical or mental impairment" lasting at least twelve months that prevents the claimant from engaging in "any substantial gainful activity." 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). First, the claimant must not be presently working at any substantial gainful activity. *Id.* §§ 404.1520(b), 416.920(b). "Substantial gainful activity" is defined as work activity "that involves doing significant physical or mental activities . . . for pay or profit." *Id.* §§ 404.1572, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. *Id.* §§ 404.1520(c), 461.920(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). Third, disability will be found if the impairment or combination of impairments meets or equals an impairment contained in the

Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.   20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to her past relevant work.  *Id.* §§ 404.1520(f), 416.920(f).  And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(g), 416.920(g); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999).[1]  At steps one through four, the burden of proof rests upon the claimant to show that he is disabled.  *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairments.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla, but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to

---

[1] Before moving from the third to the fourth step of the inquiry, the Commissioner assesses the claimant's residual functional capacity ("RFC") to determine the most the claimant can still do notwithstanding her physical and mental limitations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant's RFC is used at both the fourth and fifth steps of the sequential analysis. *Id.* §§ 404.1520(a)(4), 416.920(a)(4). At step four, the claimant's RFC is used to determine if the claimant can still do her past relevant work. *Id.* §§ 404.1520(e), 416.920(e). At step five, the claimant's RFC is used to determine whether the claimant can adjust to other types of work. *Id.* §§ 404.1520(e), 416.920(e).

determine if the evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## I.    ISSUE

In her brief, Nunley presents the following issue: Whether the ALJ erred in his assessment of claimant's residual functional capacity ("RFC") by failing to adequately consider and explain the weight assigned to the state agency medical consultant ("SAMC") opinion. (Plaintiff's Brief ("Pl.'s Br.") at 1.)

## II.   ALJ DECISION

In his September 23, 2011 decision, the ALJ concluded that Nunley was not disabled within the meaning of the SSA.  (Tr. 10-23.) In making this determination, the ALJ proceeded to follow the five-step sequential evaluation process set forth above.  (Tr. 14-15.)  The ALJ, noting that he had carefully considered the entire record and that the claimant satisfied the insured status requirements until January 31, 2014, determined Nunley had not been disabled within the meaning of the SSA from February 19, 2010 through the date of the decision.  (Tr. 13.)  At Step One, the ALJ found that Nunley had not engaged in any substantial gainful activity since February 19, 2010, the alleged onset date of Nunley's disability.  (Tr. 15.)  At Step Two, the ALJ found that Nunley suffered from the following severe impairments: bilateral sensorineural hearing loss, obesity, hypertension, major depressive disorder, and an anxiety disorder.  (Id.)

At Step Three, the ALJ held that Nunley's impairments did not meet or equal the severity of any impairment contained in the Listing. (Tr. 16-18.) As to Nunley's residual functional capacity ("RFC"), the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work[2]… except

_____

[2] Pursuant to the regulations, medium work is defined as follows:

she is unable to climb ladders, ropes, or scaffolds.  Further, she should avoid concentrated exposure to humidity, excessive noise, or wetness, and avoid all exposure to hazards, such as moving machinery or unprotected heights. She is able to perform unskilled work that involves simple instructions and simple decisions, with occasional verbal communication.

(Tr. 18 (emphasis omitted) (footnote added); *see* Tr. 18-21.)  At Step Four, the ALJ opined, based on her RFC assessment and other findings, that Nunley was not able to perform her past relevant work.  (Tr. 21.)  Finally, at Step Five, the ALJ found that, based on Nunley's age, education, work experience, and RFC, she retains the ability to perform a significant number of jobs in the national economy. (Tr. 22.)  Thus the ALJ concluded that Nunley was not and had not been disabled at any time through the date of the decision.  (Tr. 23.)

### III.  DISCUSSION

In her brief, Nunley argues that the administrative law judge ("ALJ") erred when he failed to consider and explain the weight assigned to one of the SAMC's opinions in determining her RFC.  (Pl.'s Br. at 1.)  Specifically, Nunley claims that SAMC Matthew Wong, Ph.D. ("SAMC Wong") opined that Nunley was limited in her ability to respond to supervision and complete an [eight] hour work day without unscheduled work breaks."  (Pl.'s Br. at 3.)  Nunley claims that such limitations are inconsistent with the ALJ's RFC determination.  (*Id.*)  Further, Nunley claims the ALJ improperly relied on a clinician's global assessment of functioning ("GAF") score instead of SAMC Wong's opinion.  (*Id.*)

---

Medium work involves lifting no more than 50 pounds  at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work.

20 C.F.R. §§ 404.1267(c), 416.967(c).

5

As to SAMC Wong's opinion, Nunley states:

> The ALJ gives no explanation for not including Dr. Wong's assessment of Nunley's limitations in the ability to respond to supervision in the residual functional capacity assessment and hypothetical question to the VE. Nunley concedes that the ALJ is not required to discuss each individual finding underlying the functional capacity assessment proposed by the physicians where there is substantial evidence elsewhere in the record to support the hearing decision. In the present case, the ALJ appears to fully endorse Dr. Wong's opinion without reservation, stating that "the State Agency consultants were fully consistent with the medical evidence of record." The ALJ does not rely on any other medical source opinion in the record to the contrary.

> . . . .

> . . . . Because of the ALJ's failure to adequately weigh Dr. Wong's SAMC opinion that [Nunley] is impaired in the ability to respond to supervision the resulting residual functional capacity assessment did not include all of Nunley's impairments established by the record.

> The ALJ did not consider Wong's opinion that Nunley is limited in the ability to complete a work day without unscheduled work break in light of the VE's testimony that leaving work early is detrimental to the performance of jobs.

(Pl. Br. at 4-5 (internal citations omitted).)

On the contrary, the Defendant argues that Nunley's argument is flawed. Specifically,

the Defendant states:

> Nunley's argument is flawed for multiple reasons. First, the ALJ specifically considered the opinions of each of the State Agency medical physicians, including Dr. Wong. The ALJ explained that he weighed the statements from these non-examining expert sources, concluded that they were fully consistent with the medical evidence of record, and gave great weight to their opinions.

> . . . .

> Finally, the ALJ provided for Nunley's moderate limitations in her ability to complete a normal workday and workweek, to accept instructions and respond appropriately to criticism from supervisors and in her ability to get along with co-worker or peers without distracting them or exhibiting behavioral extremes in his RFC finding. The ALJ limited Nunley to unskilled work that involved simple instructions and simple decisions with only occasional verbal communication. Dr. Wong's opinion certainly supports the ALJ's RFC finding that Nunley

retained the ability to perform unskilled work.  Nunley fails to grasp that Dr. Wong found only "moderate" limitations in these two categories, not marked.  Dr. Wong did not opine that Nunley could not perform these tasks, only that she had some limitations in these areas.  And, as noted, the ALJ more than provided for these limitations in his RFC finding.  Although the ALJ did not specifically mention Nunley's alleged issues with completing a normal workweek and supervision in his decision, the ALJ was not required to explicitly discuss all of the evidence that supported his decision or that was rejected.

(Defendant's Brief ("Def.'s Br.") at 5-7 (internal citations omitted).)

RFC is what an individual can still do despite his limitations.[3]  SSR 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects the individual's maximum ability to do sustained work activity in an ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day, five days a week, or equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.  RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-by-function assessment, with both exertional and nonexertional[4] factors to be considered, and is based on all of the relevant evidence in the case record.  *Id.* at 3-6.  The responsibility for determining a claimant's RFC lies with the ALJ.  *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making an RFC assessment, the ALJ must consider all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence.  *See* 20 C.F.R. §§ 404.1529, 404.1529, 416.929; SSR 96-7p, 1996

---

[3] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005).  The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[4] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5.  Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p at 5.  Additionally, an ALJ is to consider all medical opinions in determining the disability status of a claimant.  20 C.F.R. §§ 404.1527(b), 416.927(b).  Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review.  20 C.F.R. §§ 404.1527(f), 416.927(f); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996).  Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not limited by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2.

Findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review.  20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 374180, at *2-4 (S.S.A. July 2, 1996).  Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not bound by the state agency physicians' opinions, but may not ignore them and must explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2.

In a Psychiatric Review Technique ("PRT") dated September 21, 2010, SAMC Wong opined, *inter alia*, that Nunley was mildly limited in activities of daily functioning and moderately limited in maintaining social functioning and concentration, persistence, and pace. (Tr. 285; *see* Tr. 275-88.)  In addition, SAMC Wong found that Nunley had not suffered from any episodes of decompensation of extended duration.  (Tr. 285.)

In a Mental Residual Functional Capacity Assessment ("MRFC") also dated September 21, 2010, SAMC Wong opined in Section I, which is titled "Summary Conclusions," that Nunley was markedly limited in her ability to understand, remember, and carry out detailed instructions. (Tr. 289; *see* Tr. 289-91.)   In addition, SAMC Wong opined in Section I that Nunley was moderately limited in the following categories: (1) ability to maintain attention and concentration for extended periods; (2) ability to work  in coordination with or proximity to others without being distracted by them; (3) ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (4) ability to accept instructions and respond appropriately to criticism from supervisors; (5) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and (6) ability to respond appropriately to changes in the work setting.  (Tr. 289-90.)  In Section III of the MRFC, which is titled "Functional Capacity Assessment," the ALJ stated: "C[laimant] can understand, remember, and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings.  C[laimant]'s alleged limitations are partially supported by the EOR."  (Tr. 291.)

As to SAMC Wong's opinions, the ALJ stated:

> The severity of the claimant's mental impairments, considered singly and in combination do not meet or equal the criteria of listings 12.04 and 12.06. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of

decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

. . . . .

. . . .  Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

. . . .

As for the opinion evidence, in accordance with Social Security Ruling 96-6p, the undersigned considered the administrative findings of fact made by State Agency medical physicians regarding the claimant's mental and physical capacity to perform work-related functions. The undersigned weighed the statements from non-examining expert sources. Based on the evidence, the undersigned concludes that the State Agency consultants were fully consistent with the medical evidence of record. Thus, great weight is given to the opinions to the extent they are consistent with residual functional capacity indicated above.

In sum, the above residual functional capacity assessment is supported by the objective medical evidence contained in the record. Treatment notes in the record do not sustain the claimant's allegations of a disabling impairment. The State agency consultants' opinions are internally consistent and consistent with the evidence as a whole.

(Tr. 17-18, 21 (internal citations omitted).)

As stated above, Nunley complains that the ALJ failed to include the specific functional limitations that Nunley was limited in her ability to respond to supervision and complete an eight hour work day as noted by SAMC Wong in Section I of the MRFC Assessment.  (Pl.'s Br. at 4.) However, in this case, it is apparent from the ALJ's decision that he did take into account SAMC Wong's findings in both the PRT and the MRFC when determining Nunley's RFC.  To begin with, the ALJ specifically stated that the "State Agency consultants were fully consistent with the medical evidence of record." (Tr. 16.)  While the Court agrees that the ALJ did not specifically mention the limitations noted in Section I of SAMC Wong's MRFC Assessment, there is "nothing in the commissioner's regulations or rulings that requires an ALJ to make

findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFC] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008).   According to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFC, which contains the limitations that Nunley claims should not have been left out of the RFC determination, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."   POMS § DI 24510.060B.2. Section III of the MRFC "is for recording the mental RFC determination."   POMS § DI 24510.060B.4.   "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.*   Thus, based upon the MRFC form itself, it was not error for the ALJ to fail to include or discuss the items from Section I of the MRFC in assessing Nunley's mental RFC as they did not contain the actual opinion of SAMC Wong as to Nunley's RFC.   Instead, it is Section III that contains the actual mental RFC assessment.

In Section III of the MRFC, SAMC Wong opined, *inter alia*, that Nunley could understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors, and respond appropriately to changes in the routine work setting.  (Tr. 291.)  Thus, according to SAMC Wong and Section III of the MRFC, Nunley's only real mental limitation was that she needed to be limited to simple instructions and decisions, a limitation that the ALJ considered and included in his mental RFC determination when he limited Nunley to "unskilled work that

involves simple instructions and simple decisions."[5]  (Tr. 14.)  Consequently, the ALJ did not err

and remand is not required.[6]

### RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED
### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file

specific written objections in the United States District Court to the United States Magistrate

Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the

party has been served with a copy of this document.  The United States District Judge need only

make a de novo determination of those portions of the United States Magistrate Judge's proposed

findings, conclusions, and recommendation to which specific objection is timely made.  *See* 28

U.S.C. § 636(b)(1).  Failure to file by the date stated above a specific written objection to a

proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error

or manifest injustice, from attacking on appeal any such proposed factual findings and legal

conclusions accepted by the United States District Judge.  *See Douglass v. United Servs. Auto

Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

### ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **May 1,**

**2014**, to serve and file written objections to the United States Magistrate Judge's proposed

findings, conclusions, and recommendation.  It is further **ORDERED** that if objections are filed

---

[5] The ALJ placed additional limitations on Nunley's physical RFC based on other evidence in the record.

[6] Nunley's additional claim that the ALJ relied only on the GAF scores in making his determination is without merit. As evidenced above and throughout the ALJ's opinion, the ALJ relied on the entirety of the record in making his determination.

and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED April 17, 2014.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv

13